NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VALERIE WASKIEWICZ, et al.,<br><br>   Plaintiff,<br><br>v.<br><br>KOHL'S DEPARTMENT STORES, INC., et al.,<br><br>   Defendants. | Civil Action No. 20-07314 (GC) (TJB)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge:**

This matter comes before the Court on Defendant Kohl's Department Stores, Inc.'s Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. (ECF No. 14.) Plaintiff Valerie Waskiewicz opposed the Motion (ECF No. 19), and Defendant replied (ECF No. 20). The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion is **DENIED**.

I. **BACKGROUND**

  A. **Factual Background**

The undisputed factual circumstances surrounding this negligence action, as revealed through discovery, are set forth in submissions of the parties in accordance with Local Civil Rule 56.1. *See* ECF No. 16, Defendant's Statement of Material Facts ("DSOMF"); ECF No. 19-2, Plaintiff's Statement of Material Facts ("PSOMF"). Any disagreements among the parties as to the timing or characterization of certain aspects of the incident in question are noted for clarity where necessary and appropriate.

On December 19, 2019, Plaintiff tripped and fell in Defendant's department store located in Toms River, New Jersey. (DSOMF ¶ 1). At the time of the incident, Plaintiff was shopping in the shoe department for a pair of sneakers. (*Id.* ¶ 2). The area where the incident occurred is a "short wall" used to display "Ugg"-type boots. (*Id.* ¶ 3). The short wall area had several shelves attached to it, including a base shelf. (*Id.*) Specifically, the boot display had sample models on the upper shelf and boxes of shoes in various sizes on the lower shelves. (*Id.*) While Plaintiff was browsing the boots, another customer, Heather McFarlane, approached from Plaintiff's right, pushing a shopping cart. (*Id.* ¶ 7). McFarlane said "excuse me" to Plaintiff so that Plaintiff could let her through the area. Plaintiff moved to accommodate McFarlane, and according to Plaintiff she fell when her shoe got caught under the display platform. (*Id.*).

After the incident, Defendant's personnel responded to the shoe department and Plaintiff provided an incident report in her own handwriting. (*Id.* ¶ 12; PSOMF ¶ 4). In part, Plaintiff's incident report indicated that Plaintiff fell when her "shoe went under [the] shelf." (PSOMF ¶ 5). Similarly, Plaintiff told Jeanette Greenberg, Defendant's employee, that she fell when her shoe got caught under the shelf. (*Id.* ¶ 7). Indeed, Greenberg drafted her own incident report following Plaintiff's fall, stating that Plaintiff "had gotten her shoe stuck under the fixture when she was trying to move over to let another get through the aisle." (*Id.* ¶ 9). Greenberg further explained that "there is a silver piece on the fixture which is a leg of the shelf. This is what the customer had tripped on. She told me that when she went take [sic] a step her foot had gotten caught." (*Id.*)

At her deposition on April 29, 2021, when asked if her shoe went under the shelf, Plaintiff testified, "I'm assuming that's what happened, yes." (*See* ECF No. 14-6 ("Pl.'s Dep. Tr.") at 50:18-51:3). McFarlane—the lone witness to the incident—testified that Plaintiff was "backing up" at the time she fell. (DSOMF ¶ 14). While McFarlane initially testified that Plaintiff's foot caught

2

the corner of the bottom shelf as she was backing out of the area with her shopping cart, she later testified that she did not know whether Plaintiff's foot contacted the lowest shelf or if her body contacted the shelves above it prior to falling. (*Id.* ¶¶ 14-15).

Plaintiff's liability expert Wayne F. Nolte, Ph.D., P.E., inspected the area of Plaintiff's fall on April 6, 2021, and he issued a report on June 25, 2021. (PSOMF ¶ 12; *see also* ECF No. 14-12 at 3). According to Dr. Nolte, it was represented to him by Defendant that he was inspecting the same type of shelving system that Plaintiff had allegedly tripped over during the incident; however, the location of the shelving system was slightly different from the date of Plaintiff's fall. (Affidavit of Dr. Nolte in Opposition to Def.'s Motion for Summary Judgment ("Nolte Aff.") ¶¶ 5-6). Following his inspection, Dr. Nolte opined that the area of Plaintiff's fall was "in a hazardous condition on the day of [the] accident," based on the "presence of a display platform base that contained an opening underneath capable of entrapping a person's foot." (ECF No. 14-12 at 9). According to Dr. Nolte, "[c]ompounding that entrapment was the presence of the corner edge guard to the shelving platform that restricted movement outward from underneath the platform that was support by adjustable feet." (*Id.*) Dr. Nolte concluded that the area where the fall occurred was "contrary to the guidelines from the National Safety Council for safe movable display equipment in a retail environment" because the means of egress were not "in a safe condition free of obstructions and impediments." (*Id.* at 10).

### B.   Procedural History

On May 18, 2020, Plaintiff filed this action in the Superior Court of New Jersey, Law Division, Ocean County. Defendant removed the lawsuit to the District of New Jersey on June 16, 2020. (*See* ECF No. 1). Following a period of discovery, Defendant moved for summary judgment

3

on January 12, 2022. (*See* ECF No. 14). Plaintiff opposed the motion on February 22, 2022. (*See* ECF No. 19). On February 28, 2022, Defendant filed its reply. (*See* ECF No. 20).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which the nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial[,] . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

### III. DISCUSSION

#### A. Negligence

To state a claim for negligence under New Jersey law, a plaintiff must allege "(1) duty of care, (2) breach of duty, (3) proximate cause, and (4) actual damages." *Campbell Soup Supply Co. LLC v. Protenergy Nat. Foods Corp.*, No. 16-684, 2016 WL 7104840, at *2 (D.N.J. Dec. 5, 2016) (citing *Weinberg v. Dinger*, 524 A.2d 366, 373 (N.J. 1987)).

##### 1. Proximate Cause

Defendant's motion first contests the element of proximate cause. Proximate cause is "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (quoting *Conklin v. Hannoch Weisman*, 678 A.2d 1060, 1071 (N.J. 1996)). "Although proximate cause is ordinarily a jury issue, it may be ruled on

as a matter of law when reasonable minds could not differ." *Firstmeyer v. Cohen*, No. A-0982-07T3, 2008 WL 2520794, at *1 (N.J. Super. Ct. App. Div. June 26, 2008) (citing *Fluehr v. City of Cape May*, 732 A.2d 1035, 1041 (N.J. 1999)). "[S]ummary judgment is appropriate where 'no reasonable jury could find that the plaintiff's injuries [have been] proximately caused by the' defendant's conduct." *Thompson v. Garden State Arts Ctr., Partners*, No. A-3299-05T5, 2007 WL 1598616, at *3 (N.J. Super. Ct. App. Div. June 5, 2007) (quoting *Vega by Muniz v. Piedilato*, 713 A.2d 442, 449 (N.J. 1998)). "[T]he issue of a defendant's liability cannot be presented to the jury simply because there is some evidence of negligence; the plaintiff must introduce evidence that affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the plaintiff's injury." *Thompson*, 2007 WL 1598616, at *3 (citing *Davidson v. Slater*, 914 A.2d 282, 293 (N.J. 2007)).

Defendant asserts that Plaintiff "has not established that her foot became entrapped under the shelving base and therefore caused her fall." (ECF No. 14-2 at 6). In that regard, Defendant relies heavily on Plaintiff's equivocal testimony about precisely what she tripped on, chiefly relying on *Devincentis v. Wal-Mart Stores, Inc.*, No. 09-3138, 2010 WL 1931260, at *4-5 (D.N.J. May 13, 2010), where the court granted summary judgment after finding that plaintiff's "own speculative testimony" that she slipped on spilt soda could not overcome defendant's evidence that the soda spilled after plaintiff's fall and *Wasielewski v. Sands Hotel & Casino*, No. 04-2667, 2005 WL 1088952, at *5 (D.N.J. May 10, 2005), where the court granted summary judgment because the plaintiffs "only provided their self-serving testimony that she fell and mere speculation as to what caused her fall." (*Id.* at 4-6). Defendant emphasizes Plaintiff's testimony that she only "assumed" her foot got caught underneath the shelving, and no testimony by Plaintiff or any other witnesses corroborates her account. (*Id.*)

6

However, unlike in those cases cited by Defendant, Plaintiff here does not rely solely on her own recollection at her deposition to survive summary judgment. As Plaintiff highlights in her opposition, she also relies on two incident reports and the deposition testimony of Jeanette Greenberg. Specifically, in the first incident report, which was handwritten by Plaintiff immediately following her fall, she describes the incident as follows: "shoe went under shelf and fell." (ECF No. 14-8). In the second incident report, written by Greenberg, she explains that "[o]n 12/18/19 I responded to a call that a customer fell. She had gotten her shoe stuck under the fixture when she was trying to move over to let another customer get through the aisle." (ECF No. 14-11). Greenberg further states that "[t]here was no damage to the fixture. There is a silver piece in the fixture which is a leg of the shelf. This is what the customer had tripped on. She had told me that when she went [to] take a step her foot had gotten caught." (*Id.*) Indeed, Greenberg later testified at her deposition that on the date of the incident, Plaintiff told her that she got her shoe stuck under the fixture, and that caused her to fall. (ECF No. 14-10 ("Greenberg Dep. Tr.") at 34:24-35:7).

Moreover, Defendant relies heavily on *Ludwig v. Michaels Arts & Crafts Store*, No. 18-10306, 2020 WL 6883451, at *7 (D.N.J. Nov. 24, 2020), where the court ruled that the plaintiff's inability to say whether she tripped over an object's allegedly hazardous part destroyed her ability to prove causation:

> A mere possibility that [the plaintiff] contacted the portion of the base plate that extended into the walkway – as opposed to the portion of the base plate that did not extend into the walkway – will not be sufficient to discharge her burden of proof at trial.... "[W]hen the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."

This Court disagrees that *Ludwig*'s facts are analogous to the facts in this case. In opposing summary judgment, the plaintiff in *Ludwig* proffered nothing but her own unclear testimony, along

7

with the proposition that her unknowingness of what "caused her to fall does not eliminate the possibility that a reasonable jury could conclude [her] fall was caused by the hazardous condition." 2020 WL 6883451, at *7. Here, as detailed above, Plaintiff relies on more than her own testimony to defeat summary judgment. Accordingly, because the Court finds that Plaintiff has provided sufficient evidence to create a triable issue of fact, Defendant's motion for summary judgment is denied.

2. *Plaintiff's Post-Deposition Affidavit*

Defendant also asserts that Plaintiff's post-deposition affidavit, in which she swore that "while shopping in the shoe department at Kohl's, […] my foot got stuck under the display causing me to fall," should be disregarded as a "sham" affidavit. (ECF No. 20 at 8-9). The sham affidavit doctrine provides a narrow exception to the usual rules of summary judgment. That doctrine "refers to the trial courts' practice of disregarding an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony." *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004); AFFIDAVIT, Black's Law Dictionary (11th ed., 2019) (stating that a sham affidavit is an "affidavit that contradicts clear testimony previously given by the same witness, usually used in an attempt to create an issue of fact in response to a motion for summary judgment"). To be covered by the sham affidavit doctrine, the affidavit testimony must actually contradict previous deposition testimony, not merely differ from it or be in tension with it. *See SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 210 (3d Cir. 2022) ("[T]he sham affidavit rule permits striking only contradictory statements in later-provided affidavits or declarations."); *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007) (referring to sham affidavits as "contradictory affidavits").

Indeed, even a directly contradictory affidavit is not automatically excluded. Wright & Miller, 10B Fed. Prac. & Proc. Civ. § 2738 (4th ed.) ("[A] witness' affidavit will not be automatically excluded because it conflicts with the witness' earlier or later deposition."). The court must use its judgment, though it generally should take deposition testimony as more reliable than affidavit evidence, because the former has the benefit of cross examination. *Id.*; *U.S. v. Johns-Manville Corp.*, 259 F. Supp. 440, 456 (E.D. Pa. 1966) ("The fact that certain statements of the affiant contained in ... his affidavit are in conflict with his deposition ... is not grounds for excluding the statements in the affidavit. However, the testimony in the deposition will be treated as more reliable than the statements in the affidavit.") (internal citations omitted).

The purpose of the sham affidavit doctrine, then, is to prevent a party from manufacturing an issue of fact to defeat summary judgment, especially after the opposing party has spelled out its case in its summary judgment motion. *See In re CitX Corp., Inc.*, 448 F.3d 672, 679 (3d Cir. 2006); *Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

Defendant argues that Plaintiff's affidavit, which definitively claims that her foot got stuck under the display shelving, is patently inconsistent with her prior deposition testimony that she only "assumed" her fall was caused by her foot becoming trapped underneath the shelving and her interrogatory response that her foot "may have" gotten stuck under the shelf. (ECF No. 20 at 8.) The Court disagrees, however, noting that Plaintiff does not rely on her affidavit to "manufacture an issue of fact." *Hogan v. Kohl's Corp.*, No. 20-5058, 2023 WL 3183007, at *5 (D.N.J. Apr. 30, 2023). As discussed more fully above, the record includes sufficient evidence for a reasonable jury

to find that Plaintiff previously reported that her foot lodged underneath the shelving, resulting in her fall. In short, the Court highlights the post-incident reports completed by Plaintiff and Greenberg following Plaintiff's fall, as well as the testimony of McFarlane, which all speak to Plaintiff's foot becoming caught underneath the display shelving. Moreover, construed in a light most favorable to Plaintiff, the Court finds that her uncertain testimony regarding the cause of her fall, *i.e.*, that she assumed her fall was the result of her foot being stuck, is not entirely at odds with her more definitive statement in the post-deposition affidavit. Rather, Plaintiff's post-deposition affidavit simply sought to clarify Plaintiff's recollection of the events given the length of time between the incident and her deposition. As a result, the Court will not disregard Plaintiff's affidavit, which only bolsters that genuine disputes of material fact exist to preclude summary judgment.

      **B.**      **Net Opinion Rule**

Finally, Defendant argues that Dr. Nolte's opinion constitutes a "net opinion." (ECF No. 22-1 at 27-30). "Under New Jersey law, an 'expert's bare conclusions, unsupported by factual evidence' are an inadmissible 'net opinion.' " *W. Am. Ins. Co. v. Jersey Cent. Power & Light Co.*, No. 03-6161, 2008 WL 5244232, at *5 (D.N.J. Dec. 15, 2008) (quoting *Buckelew v. Grossbard*, 435 A.2d 1150, 1156 (1981)). Pursuant to the net opinion rule, the expert's opinion "must be based on a proper factual foundation." *Dawson v. Bunker Hill Plaza Assocs.*, 673 A.2d 847, 853 (N.J. Super. Ct. App. Div. 1996). The expert's testimony should be excluded "if it appears the witness is not in possession of such facts as will enable him or her to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture." *Id.* (quoting *Vuocolo v. Diamond Shamrock Chemicals Co.*, 573 A.2d 196, 202 (N.J. Super. Ct. App. Div. 1990)). Simply put, an

expert is required "to give the 'why and wherefore' of the opinion, rather than a mere conclusion." *Curtis v. Besam Grp.*, No. 05-2807, 2007 WL 3232589, at *7 (D.N.J. Oct. 31, 2007).

To be clear, "the admissibility of expert testimony in federal court is not governed by the New Jersey 'net opinion' rule, but by the Federal Rules of Evidence." *Gurvey v. Twp. of Montclair New Jersey*, No. 19-17525, 2022 WL 970303, at *19 (D.N.J. Mar. 31, 2022); *Holman Enterprises v. Fid. & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 472 (D.N.J. 2008) ("[T]he 'net opinion' rule is neither an evidentiary rule under the Federal Rules of Evidence nor a factor in the *Daubert* analysis."). Still, some courts in this District assess net opinion arguments under the *Daubert* analysis. *See Jersey Cent. Power & Light Co.*, 2008 WL 5244232, at *5 (compiling cases). Other courts analyze whether the expert's opinion is of "assistance to the trier of fact" and sufficient to establish causation. *See May v. Atl. City Hilton*, 128 F. Supp. 2d 195, 198 (D.N.J. 2000). Irrespective of whether this issue is analyzed under *Daubert* or as an independent net opinion analysis, "the inquiry remains the same—whether the expert's opinion will assist the trier of fact." *Iudici v. Camisa*, No. 12-3466, 2022 WL 3998295, at *3 (D.N.J. Sept. 1, 2022).

Defendant relies on *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, where the United States Court of Appeals for the Third Circuit held that an expert's opinion that inadequate stripping in a bathtub caused the plaintiff to fall was "based on pure speculation, rather than reasonable inference," and thus was "without foundation and ... inadmiss[i]ble." 82 F.3d 69, 75 (3d Cir. 1996). The Third Circuit reasoned that "[i]t [was] speculative to conclude that the inadequate stripping caused [the plaintiff]'s injuries when no evidence in the record indicate[d] where [the plaintiff] was standing in the tub," and that "[i]t [was] also speculative to infer that [the plaintiff] was standing between the strips at the time of the accident solely from the fact that she fell." *Id.* Defendant argues that although Dr. Nolte's opinion concludes that an opening underneath the

display platform base caused Plaintiff's fall, his opinion also "reveals that he only reviewed plaintiff's interrogatory answers and the accident reports as to the happening of the accident." (ECF No. 14-2 at 9). In that regard, Dr. Nolte did not review Plaintiff's testimony or the testimony by McFarlane, which according to Defendant, demonstrates that it was only Plaintiff's assumption that her foot got caught underneath the shelving. (*Id.*) Thus, Defendant maintains that Dr. Nolte's opinion has no foundation of fact relating the alleged defect to the accident. (*Id.* at 9-10).

Here, by Defendant's own admission, Dr. Nolte considered evidence beyond mere speculation that Plaintiff's foot got caught underneath the shelving display in preparing his report. For example, unlike in *Fedorczyk*, where "no evidence" existed in the record indicating the plaintiff's location in the bathtub at the time of her fall, the post-incident reports drafted by Plaintiff and Greenberg following Plaintiff's fall suggest that Plaintiff fell because her foot got caught underneath the opening in the display shelf. Indeed, the sum of this evidence supports a legitimate inference that Plaintiff fell when her foot became trapped underneath the display shelving. The fact that other competing evidence exists in the record—like testimony by Plaintiff and McFarlane—simply demonstrates a genuine issue of fact for determination by a jury. The presence of that evidence does not render Dr. Nolte's opinion inadmissible. And further, the Court notes that Dr. Nolte cited to relevant literature on slip and falls, including the "Uniform Fire Code," the "Uniform Construction Code," and the "National Safety Council, Accident Prevention Manual," to set forth the industry standards that justified his conclusion. (See ECF No. 14-12 at 5-9.) Lastly, the fact that Dr. Nolte inspected Defendant's Toms River location after it had been reconfigured, and therefore, he did not personally inspect the same shelving display that allegedly caused

Plaintiff's fall, does not nullify his report. Rather, such information may go to the weight that a fact finder may give his report, but it does not make Dr. Nolte's opinion inadmissible.[1]

### IV. CONCLUSION

The Court, construing all facts and legitimate inferences in the light most favorable to Plaintiff, concludes that there are genuine issues of material fact for trial, and thus **DENIES** Defendant's Motion for Summary Judgment. An appropriate Order will follow.

Dated: June 9, 2023

*s/ Georgette Castner*
Georgette Castner
United States District Judge

---

[1] The Court notes that according to Dr. Nolte, Defendant's representatives advised him that the shelving unit he inspected was the same type as the one allegedly responsible for Plaintiff's fall, and that the only difference was the location of the shelving display in the store. (Nolte Aff. ¶¶ 5-6). Indeed, Dr. Nolte certified that Defendant's counsel was available at the time of inspection, and he did not object at the time. (*Id.* at ¶¶ 7-8).